## COUNTY OF BENNINGTON,

AT THE

### FEBRUARY TERM, 1864.

PRESENT:

Hon. ASA O. ALDIS,
Hon. JOHN PIERPOINT,
Hon. JAMES BARRETT, } *Assistant Judges.*
Hon. ASAHEL PECK,

---

SHEPHERD KNAPP AND GEORGE BRIGGS, *Trustees, &c. v.*
JONATHAN STURGES ET AL.

*S. C.* 31 *Vt.* 1; 33 *Vt.* 486, *Ante, p.* 439.

[IN CHANCERY.]

*Bondholders. Damages. Principal and Agent. Assignor and
Assignee. Subrogation. Railroad. Trustees.*

The trustees of a railroad, who had acquired an absolute title under decree of
foreclosure, made a lease of the road for a term of years. A majority of the
bondholders under the mortgage being desirous of having the lease set aside,
instituted proceedings through a committee against the trustees and the
lessees, to invalidate the lease and obtain an injunction against any further
occupation under it. This was granted by the court of chancery, but the
orators were required to give a bond in the sum of $30,000. as an indemnity
to the defendants against damages sustained by the injunction, if it should
ultimately be held to have been improperly granted. Such was the final
decision of the supreme court, and the orators' bill was dismissed with costs.
Injunction damages to the amount of the bond having been subsequently
recovered by the defendants, it was held by the supreme court that only
those bondholders could share in the distribution thereof, who did not assent

Knapp et al. *v.* Sturges et al.

to or participate in the prosecution of the suit. Previous to said lease three of the bondholders executed a power of attorney. to S. & R. to act in their behalf in all things in relation to the leasing or future operating of said railroad. In pursuance thereof S. & R. opposed the leasing of said·railroad and subsequently, without the knowledge of the three bondholders, S. signed a paper for himself and others not named, authorizing the commencement and prosecution of said suit and took an active part as one of the committee in its prosecution and claimed to represent the bondholders who signed said power of attorney. S. told them that he had done nothing to bind them, but they knew the suit was being prosecuted and interposed no dissent. *Held,* that they thereby participated in its prosecution.

Previous to the commencement of said suit, P., who assented to its prosecution, owned bonds to the value of $4,500. and passed them to the L. Bank as collateral security for a loan of $5,000. When P. had paid up said loan to within a few hundred dollars, after said suit had been instituted, the S. Bank entered into an arrangement with the L. Bank to pay up the balance of said loan and take said bonds as collateral security for a debt of $7,000. that the S. Bank had against P. and also for what they paid to the L. Bank. *Held,* that the S. Bank, as it did not purchase said bonds, but took them as collateral security for their debt against P., took its title from P., and must stand in his place as to this injunction fund, although neither Bank knew of P.'s participation in or assent to the prosecution of said suit.

One M. executed and sent to the said committee of the bondholders a power of attorney, perfect in all respects to authorize them to act for him in the prosecution of said injunction suit, except the names of the committee were not inserted, a space for their names being left blank. *Held,* that M. thereby participated in the prosecution of said suit.

Where a holder of these bonds participated in the prosecution of the injunction suit, and after the decision of that suit and the rights of the parties to the fund in question became fixed, transferred them, the assignee can stand in no better position than the former owner in respect to this fund, although he had no notice of the participation of the assignor in said prosecution.

Where one was subrogated to the rights of a holder of these bonds after the damages accrued which forms the fund in question, the holder having participated in the prosecution of said suit, the other party under the order of subrogation takes no greater rights than the holder had.

C. was not in favor of prosecuting said suit, and so expressed himself to the trustees of said railroad, but being absent he appointed an attorney to attend to his bonds, and the attorney participated in its prosecution in behalf of C. and when this fact afterwards come to the knowledge of C., he did not apprise the committee of his disapproval, and they did not know of it. *Held,* that he has no right to a distributive share of the fund by virtue of his bond.

Knapp et al. *v.* Sturges at al.

APPEAL FROM CHANCERY. The history of this case so far as material, will be found in the report of the case between the same parties, *ante*, p. 439.

After the decision of that cause in the supreme court, determining the amount of injunction damages to be recovered, and the basis of apportionment of them between the respective defendants, the case was remanded to the court of chancery and a final decree perfected.

In the meantime, the present bill had been brought by the trustees against all the bondholders individually, for the purpose, among other things, of ascertaining and determining what bondholders were entitled to participate in the distribution of the damages recovered of Mr. Sturges, which had been in effect paid into the hands of the trustees by an arrangement among the parties. The bill being in this respect in the nature of a bill of interpleader. A reference was ordered to special masters to ascertain and report the names of the bondholders at the time the injunction was granted, and also at the time of the hearing, with the number and amount of bonds held by each. And also to report who among them participated in obtaining or assented to the injunction. No question was made before the masters as to a large number of the bondholders, whom it was admitted did not assent to nor participate in the injunction proceedings, and were therefore entitled to share in the damages recovered, nor as to another large class, whose participation in those proceedings was conceded. The contest was between Mr. Sturges, the orator in the injunction suit, against whom the damages were recovered, (his co-orator Douglass being insolvent,) and certain bondholders who were claimed by him to have assented to the obtaining of the injunction, and to have authorized him to represent them in applying for it, but who denied that they so participated, and claimed a right to share in the damages recovered. In this controversy, the trustees took no part.

The masters made their report to the December Term, 1863, excluding from a share in the recovery all the bondholders whose participation in the injunction proceedings was thus disputed. And a *pro forma* decree of the court of chancery, in accordance

with the report, having been taken, fourteen of these bondholders appealed from that decree to the supreme court, upon various grounds that sufficiently appear in the opinion of the court.

*G. W. Harmon*, *A. B. Gardner* and *A. P. Lyman*, for the apellants.

*L. B. Peck*, for the Troy & Boston R. R. Co.

*E. J. Phelps*, for Mr. Sturges, respondent.

PECK, J. The orators having a fund in their hands as trustees bring this bill for a decree of distribution directing them to whom and in what proportions to pay the same. The fund consists of damages recovered by them on an injunction bond in a suit in chancery against them and the Troy & Boston R. R. Co., by Sturges and Douglass and others. The history of the controversy appears in the report of that case in 31 Vt. 1 ; 33 Vt. ; and in the decision of this court in the same case at the February Term, 1863, reported *ante* p. 439. In that case damages were recovered by the trustees and also by the Troy & Boston R. R. Co. The damages being several in their character were assessed to them severally. The aggregate amount of the damages sustained by the defendants in that cause by reason of the preliminary injunction amounted to more than the $30,000. the penalty of the bond. The court having decided that the orators in that bill were not liable for damages beyond the amount of the injunction bond, it became necessary to apportion the $30,000. between the Troy & Boston R. R. Co., and the trustees, and in doing so the court incidentally decided that the bondholders who participated in the prosecution of the injunction suit in behalf of the orators therein, were not entitled to share in the distribution of the damages recovered on the injunction bond ; and on that basis apportioned the damages between the Troy & Boston R. R. Co., and the trustees. It will be seen on reference to that case that the damages recovered by the Troy & Boston R. R. Co., was for being deprived by the temporary injunction, of the use of the Western Vt. Railroad under a lease to them from the trustees, to set aside which lease that suit was prosecuted by some of the

bondholders under the mortgage in which Knapp and Briggs were trustees. The damage received by the trustees was for the loss of the rent under that lease for the same time. The court of chancery in the decree of distribution in this case adopted the same rule applied in that case, and exclued the bondholders who participated in the prosecution of that suit from any participation in the fund. Some portion of the bondholders who were thus excluded have taken this appeal. The appellants do not claim that this rule or principle adopted by the chancellor in making the decree is erroneous, but claim that the facts do not show such participation on their part in the prosecution of the suit in which the preliminary injunction was obtained, as to bring them within this rule of exclusion. It is claimed as to some of the appellants that the evidence reported by the masters does not justify the finding of the facts reported. On examining the testimony we are satisfied with the finding of the masters upon matters of fact; and as to some of the appellants additional facts seem to be proved which make the case still stronger against them.

The bondholders disagreeing as to the propriety of attempting to set aside that lease, a paper was signed by some of them authorizing a committee of the bondholders to institute proceedings to vacate the lease, and the suit was prosecuted accordingly. If these appellants authorized or participated in the prosecution of that suit, they are no more entitled to share in this fund than those bondholders who were parties complainants on the record.

1. David Carpenter, Luther Graves, and Sophia B. Norton administratrix of Julius Norton, own bonds in severalty, but the facts on which their rights severally depend are substantially the same. It appears a power of attorney was executed by those who represented these bonds to James L. Stark and H. G. Root, about the 3d day of January, 1857, authorizing Stark and Root to act in their behalf in all things in relation to the leasing or future operating of the railroad. In pursuance of that power of attorney, Stark and Root went to New York and opposed the leasing of the railroad by the trustees, and subsequently Stark,

as the masters find, signed for himself and others the paper authorizing the commencement and prosecution of the suit, and from that time took an active part as one of the committee in the prosecution of the suit, and claimed to represent the bondholders who signed the power of attorney above mentioned. They resided in Bennington where the suit was pending, knew the suit was so pending, and that Stark was actively engaged in its prosecution, and they took no steps to revoke the power of attorney or to interfere with the acts of Stark. It appears that Stark gave Sturges and Douglass, the principal orators in that bill, to understand that he was authorized by the Bennington bondholders to act as he did, although he did not show them the power of attorney. It is true the masters find that Stark in 1857, told these Bennington bondholders that he had done nothing to bind them, but still the masters find the fact that they assented to the prosecution of the suit. If the counsel for these appellants are right in claiming that the written power of attorney did not authorise Stark to prosecute the suit, still they must be taken to have assented to and adopted his acts. Upon these facts and other circumstances stated in the report it was the duty of these appellants, if they wished to take no part in the prosecution of the suit, to have in some way manifested their dissent.

2. In relation to Moses F. Rogers, Stephen R. Rogers, W. W. Cheney, Asa F. Curtis, Joseph R. Wing, E. G. Dillingham and S. R. Wing, it is not denied but that Moses F. Rogers had authority to act in their behalf, and that in whatever he did in the matter he did so act. The masters find that " from the testimony and evidence herewith returned, and his, (Moses F. Rogers') letters to Jonathan Sturges, copies of which are returned herewith, we find that he (Moses F. Rogers,) assented to and co-operated in the commencement and prosecution of the injunction suit." This finding is warranted by the evidence whether we look at the written correspondence alone as the appellants' counsel claim, or whether we take it in connection with the other evidence.

3. The claim of the Saratoga Bank rests on bonds to the amount of $4,500. which belonged to one Platt, who at the com-

mencement of the injunction suit had passed them to the Lansing-burgh Bank as collateral security for a loan of $5,000. to Platt. On or about December 1st, 1858, that $5,000. loan having been paid all but three or four hundred dollars, the Saratoga Bank by arrangement with Platt or by his consent paid this small balance due the Lansinburgh Bank and took these bonds under an agreement with Platt, that they should hold them with other securities they then held as security for a debt of about $7,000. they then had against Platt, and also as security for what they paid to the Lansingburgh Bank for Platt. It did not appear before the masters that either of these banks knew of the injunction suit, or knew that Platt assented to its commencement or prosecution, but the masters find that Platt in January or February, 1857, did assent to the prosecution of that suit by authorizing Douglass to repre-sent these bonds for that purpose, which Douglass did accord-ingly. It is claimed by the counsel for this appellant, that the act of Platt cannot prejudice the claim of the bank to the fund in question for the reason that the Lansingburgh Bank held the bonds at the time as collateral security. Had Platt paid the whole debt to the Lansingburgh Bank and then passed the bonds to the Saratoga Bank as security, we think it clear that the appellant would stand in no better condition than Platt in this respect, had he kept the bonds, and clearly he could not in such case have participated in the distribution. It is claimed on both sides that after the foreclosure of the mortgage the bonds no longer repre-sented a debt, but only an undivided interest in the property mortgaged and foreclosed. In case of an assignment of one of these bonds *pendente lite*, the assignee would take subject to this equity which attached to it in the hands of the assignor. The only doubt is as to the balance of three or four hundred dollars the appellant paid to the Lansingburgh Bank. Platt had paid almost the entire debt to the Lansingburgh Bank, and obviously the main object of the appellant in the arrangement was to procure the bonds as collateral security for the debt it already had against Platt; and as it is stated in the report that the Saratoga Bank paid the balance, and not that it purchased the bonds of the Lansingburgh Bank, we regard it as a payment *to*, and not a

purchase *of* the Lansingburgh Bank. In this view of · it the Saratoga Bank takes its title from Platt, and must stand in his place as to this fund, the same as if Platt had paid the whole debt to the Lansingburgh Bank to redeem the bonds, and then passed them to the appellant. This appellant is therefore entitled to no share of the fund.

4. Jacob W. Moore the masters find, executed and delivered or sent to the committee of the bondholders a power of attorney, perfect in all respects to authorize them to act for him in the commencement and prosecution of the injunction suit, except the names of the committee were not inserted, a space for the names being left blank, and on this authority the committee acted. The masters find that Moore thereby authorized the commencement of that suit. It is a reasonable presumption that this instrument was forwarded to the committee by Moore for the purpose of clothing them with power to act for him, and the committee were justified in so regarding it, whether the names were left blank by mistake or by reason of the names of the committee being unknown to him; and he is not now at liberty to repudiate it. Moore must be classed among those who participated in the prosecution of that suit.

5. Joseph H. Parsons obtained his bonds of the Savings Bank of Middletown, Connecticut, in 1860. The final decision in the injunction suit affirming the lease, discharging the receiver and restoring the railroad to the lessees, was made in December, 1858, so that the rights of the parties to the fund in question were fixed before Parsons became the owner of the bonds. The bank while it owned these bonds co-operated in the prosecution of that suit, and consequently had no claim to this fund when it transferred the bonds to Parsons. Assuming that this transfer of the bonds would operate in equity to transfer any interest the assignor had in this fund in respect to these bonds, yet it is clear that the assignment of the bonds would carry with it no greater equity than the assignor had, notwithstanding the assignee had no notice that the assignor had participated in the prosecution of the suit. Whether Parsons would be personally liable to contribute to the expenses of the suit is quite another question. As

to the right to this fund the appellant can stand in no better condition than the former owner of the bonds. A right in this fund cannot be said to have passed as incident to the bonds when no such incident existed. Nor can it be said that the appellant has acquired any right to the fund since he became the owner of the bonds, since the whole damage which constitutes this fund had been sustained by the bondholders before the appellant acquired any interest in the bonds.

6. The appeal of Myron Clark may be disposed of substantially, on the same ground as that of Parsons. Clark was an accommodation endorser to Lapham for the Western Vt. R. R. Company on a draft. Lapham held as collateral security the bonds in question which the R. R. Company had turned out to him, the bonds never having been before · negotiated. Clark brought a bill in chancery for relief against his endorsement; the court held him liable, but decided that on payment of the draft he should be subrogated to the rights of Lapham as to these bonds. Clark paid the draft and took the bonds. This order of subrogation was after all these damages had accrued which forms this fund. Lapham while he held the bonds participated in prosecuting the injunction suit, and therefore he had no right to the fund. Clark under the order of subrogation takes no greater rights than Lapham had. A question is made as to the power of Lapham to represent those bonds in the prosecution of that suit. This is more properly a question between him and Clark,—it can not be used to give Clark under the order of subrogation any greater right to this fund than Lapham had, to the prejudice of the innocent bondholders who had no agency in procuring the injunction or prosecuting the suit.

7. Alonzo Child has no right to a distributive share of the fund by virtue of the bonds held by him. It appears that he was absent at St. Louis engaged in business and constituted his nephew O. W. Child his attorney to attend to these bonds and other business. O. W. Child as such attorney, signed the paper appointing Stark, Sturges and Douglass a committee of the bondholders under which authority that suit was commenced and prosecuted. No question can be made as to the authority of O.

47

W. Child, and the appellant in his testimony does not question its sufficiency. It is true that it was not in accordance with the wish of the appellant as expressed to Knapp and Briggs the trustees. Personally he was not in favor of the prosecution of the suit, but this was not known to said committee. The paper was signed by his attorney without his knowledge, and when it came to his knowledge some time afterwards he was disappointed and did not approve of it, but this was not known to the committee who were prosecuting the suit, and he took no means to apprise them of it. If the appellant did not intend to be bound by the act of his authorized attorney, he at least should have countermanded it when it came to his knowledge.

We find no error in the decree of the court of chancery and it is therefore affirmed and the cause remanded.