ALBERT P. CARTER *vs.* TANNERS LEATHER COMPANY & others.

Suffolk.   March 20, 1907. — June 20, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Assignment*, For benefit of creditors. *Equity Jurisdiction. Marshalling. Fraud.*

The treasurer of a corporation wrongfully issued a note in the name of the corporation which he and another person indorsed and negotiated, and the proceeds of which they used in a joint venture of their own. The note came into the hands of a purchaser for value without notice of its wrongful issue. The corporation made a common law assignment of all its property for the benefit of its creditors, and immediately thereafter the treasurer's co-indorser assigned rights, which

were his, subject to certain contingencies, under a contract which provided for an income to him from certain industrial operations, to trustees under an agreement in writing signed by the holder of the note that the contract should be " held by them in trust for the payment of the principal and interest of" that note and certain other obligations which were not provable as claims against the assets of the corporation, and that " any dividend or payment received " by the holder of the note from the corporation or from the treasurer should " be duly credited upon the same." The trustees, in four years, had received under the contract thus assigned to them about half its value, which was not sufficient to satisfy the note, and would probably receive the other half in about four years more, but it was doubtful whether the entire proceeds of the contract would be sufficient to satisfy the obligations it secured. A general unsecured creditor of the corporation contended that the holder of the note should seek satisfaction of it first from a liquidation of the contract assigned to the trustees, and should be allowed to share *pro rata* in the funds in the possession of the corporation's assignee only on the basis of the amount of the balance left due on the note after resorting to such contract for payment. *Held*, that the holder of the note could not be compelled first to resort to the security furnished by the fraudulent treasurer's co-indorser, but, if he chose, could seek satisfaction first from the funds in the hands of the assignee of the corporation.

BILL IN EQUITY by the assignee under a common law assignment for the benefit of creditors by the Tanners Leather Company, seeking instructions regarding the distribution of the proceeds in his hands from the liquidation of the assets of the assignor, filed in the Supreme Judicial Court for the county of Suffolk May 16, 1906.

The case was referred to a master who made a report to which objections and exceptions were filed. The case was heard before *Rugg*, J., who reserved it for consideration and determination by the full court. The facts are stated in the opinion.

*E. F. McClennen*, (*F. M. Copeland* with him,) for the secured creditors.

*A. E. Denison*, (*A. W. Denison & C. C. Bucknam* with him,) for the Atlantic National Bank.

SHELDON, J. The petitioner is the assignee under a common law assignment for the benefit of creditors, made in March, 1903, by the Tanners Leather Company, a corporation organized in March, 1902. The petitioner has converted all or nearly all the assets so assigned to him into cash, and asks the instructions of the court as to its distribution. The case has been sent to a master, and he has found and reported to the court the names of the creditors of the corporation and the amounts of their sev-

eral demands. Among these demands are seven promissory notes of the corporation to the amount of $30,000, each of which was indorsed by one Kimball and one Van Tassel. There was evidence, which the master received *de bene* only, that these notes were issued by Kimball, its treasurer, without its authority; but they are now in the hands of holders who took them before maturity in good faith, for value, and in the belief that their proceeds were for the use of the corporation. It is not denied that these notes can be enforced against the corporation. This evidence tended to show also the following facts: Each one of these notes was really issued and its proceeds were used solely for the benefit of Kimball and Van Tassel, in a mining operation in which they were engaged. Other similar notes of the Tanners Company were issued by Kimball, in the same way, for the benefit of Van Tassel and himself, and indorsed by them, which have been found not to be held by takers in due course, and so have not been allowed against the corporation. Van Tassel held an agreement with one DuBois, dated October 23, 1901, by which DuBois agreed to pay to Van Tassel the market price, less certain deductions, of the bark which should be cut and peeled in the future on certain lands in Pennsylvania, this market price to be fixed by agreement or arbitration from year to year. Van Tassel assigned this contract, hereinafter called the bark contract, directly to his wife, by assignment dated December 24, 1901. Immediately after the Tanners Leather Company made its assignment to the petitioner as aforesaid, Van Tassel and his wife assigned the bark contract to trustees, to be " held by them in trust for the payment of the principal and interest of " the notes signed by the Tanners Leather Company and indorsed by Van Tassel, amounting to $50,000. It was also provided that " any dividend or payment received " by the holders upon said notes " from the said Tanners Leather Co. or from said Wm. F. Kimball shall be duly credited upon the same." The agreement containing these provisions was executed by the holders of the seven notes aforesaid. The present trustees under this assignment have now, about four years after the assignment to them, received about $30,000, a large part of which however is an advance to be repaid from the proceeds of future cuttings; and it is estimated that the contract will yield

them, if the cutting is made at the same rate as heretofore, a total sum of about $60,000; but nothing has yet been paid to the beneficiaries under the trust.

The Atlantic Bank, one of the creditors of the Tanners Leather Company, claims that upon these facts the holders of the seven notes indorsed by Kimball and Van Tassel should not be permitted to participate in any distribution of the general assets in the hands of the petitioner until they shall have exhausted their security under the Van Tassel bark contract, and then only for the balance of their several claims after deducting such amounts as they shall have received from that security; and this claim raises the questions which are presented before us.

There are doubtless here two classes of creditors: First, the general creditors of the Tanners Leather Company, who can hold only the general assets of the company in the hands of the petitioner, and, second, the holders of the seven notes indorsed by Kimball and Van Tassel, who can hold both these assets and the funds that have been and hereafter shall be realized upon the bark contract. In behalf of the former class, it is claimed that the assets should now be marshalled, so as to require the holders of the Van Tassel notes to look first to the latter fund, upon the equitable rule stated in *Cheesebrough* v. *Millard*, 1 Johns. Ch. 409, that a person having a right to satisfy his debt or claim out of two funds, to but one of which another person can resort, shall be compelled first to exhaust the fund to which the other cannot resort before coming upon the one available to both; and that thus the person having an interest in the double fund is prevented by a court of equity from exercising his right to enforce that interest to the prejudice of the person having an interest in the single fund only. It is not worth while to attempt to refer to the numerous cases in which this general principle has been declared and recognized. Nor is it disputed that, as a general rule at any rate, it is not to be applied where the two funds to which the creditors or sets of creditors may resort are not derived from a common source, or are not in the hands of a common debtor.

There is no question here that the holders of these seven notes, being holders in due course, have a right to hold both the

Tanners Leather Company as promisor and Van Tassel as indorser. They have a right to look to each one of their debtors until they shall have received full satisfaction. If they held no security from either, they could prove in bankruptcy against the estates of each, and receive full dividends from each until they should have obtained complete payment. *Mercantile Bank* v. *McFarlane*, 71 Minn. 497. *In re Baxter*, Fed. Cas. No. 1122. *Moch* v. *Market Street National Bank*, 107 Fed. Rep. 897. Nor would the right to prove in full and receive dividends against the estate of one party be abridged by the fact that the creditor held security from the other party. *Hale* v. *Leatherbee*, 175 Mass. 547. *Gorman* v. *Wright*, 136 Fed. Rep. 164. *In re Headley*, 97 Fed. Rep. 765. *In re Dunkerson*, Fed. Cas. No. 4157. *In re Cram*, Fed. Cas. No. 3343. These are illustrations of the general principle that the rule of marshalling assets will not be enforced to the prejudice of the creditor against whom it is sought to be applied.

The Atlantic Bank, however, rests its demand upon its contention that, as between the debtors, the burden of paying these notes ought to be thrown upon Van Tassel, for the relief of the Tanners Leather Company. It contends that, when it appears that between the two debtors there are equities whereby one ought to pay the debt for the relief of the other, there is an exception to the general rule that assets will be marshalled only among creditors of a common debtor, and that marshalling may be resorted to to give effect to the equities in favor of the creditors of that debtor who is only secondarily liable for the debt, or ought to be called upon only after the exhaustion of the other's means. This was the rule adopted in *Newsom* v. *McLendon*, 6 Ga. 392. Although we are not aware of any other decision in which it has been actually applied, it has been frequently declared both in text-books and in the judicial opinions, following the statement of Lord Eldon in *Ex parte Kendall*, 17 Ves. 514, that the doctrine of marshalling will not be carried to this extent unless founded on some equity giving to one debtor the right for his own sake to compel the creditor to seek payment from the other debtor. *Dorr* v. *Shaw*, 4 Johns. Ch. 17. *Ayres* v. *Husted*, 15 Conn. 504. *Wise* v. *Shepherd*, 13 Ill. 41. So Story, Eq. Jur. § 642, after stating the general rule that equity will

not marshal assets as between different creditors unless they are creditors of the same common debtor, adds, " At least it will not do so unless it should appear that the debt . . . ought to be paid by one of the debtors only, or there should be some other supervening equity." See also *Quinnipiac Brewing Co.* v. *Fitzgibbons*, 73 Conn. 191; *McCormick's appeal*, 57 Penn. St. 54; *Dorr* v. *Shaw*, 4 Johns. Ch. 17. In *Thompson* v. *Spittle*, 102 Mass. 207, and *Swift* v. *Kortrecht*, 112 Fed. Rep. 709, there was no such equity in favor of the debtor whose creditor asked for the interposition of the court as upon the facts is claimed to exist here. See *Mason's appeal*, 89 Penn. St. 402.

There is no doubt that upon the facts which the evidence tended to prove, these notes ought to be paid by Kimball and Van Tassel, and that the Tanners' Company had a right to insist that this should be done. If the petitioner as the assignee of the corporation shall be held to pay anything upon them out of its assets, he will have, it may be assumed, a right of action against Kimball and Van Tassel for the amount of such payment. But the holders of the notes have a right to treat the corporation as their primary debtor and to look in the first instance for their payment to the funds of the corporation in the hands of the petitioner. He could not compel them before doing this to bring suit against the indorsers and to exhaust their assets. *Downing* v. *Traders' Bank*, Fed. Cas. No. 4046. *In re Babcock*, Fed. Cas. No. 697. The creditor who can hold two funds, even where there is only one common debtor, is not required to address himself first to that one which he alone can claim, when he can obtain the benefit of that fund only by litigation, especially if final satisfaction is somewhat uncertain. *Kidder* v. *Page*, 48 N. H. 380. *Emmons* v. *Bradley*, 56 Maine, 333. *Mason's appeal*, 89 Penn. St. 402. *Moore* v. *Wright*, 14 Rich. Eq. (S. C.) 132, 134. *Walker* v. *Covar*, 2 S. C. 16. *Wolf* v. *Smith*, 36 Iowa, 454. *Simmons Hardware Co.* v. *Brokaw*, 7 Neb. 405. Nor will he ordinarily be restricted, even in the first instance, to one fund unless that fund appears to be sufficient to satisfy his demand, without materially delaying him in obtaining his payment. *Coker* v. *Shropshire*, 59 Ala. 542. *Briggs* v. *Planters' Bank*, Freem. Ch. (Miss.) 574. *Trapnall* v. *Richardson*, 13 Ark. 543. *Pennock* v. *Hoover*, 5 Rawle, 291. *Detroit Savings Bank*

v. *Truesdail,* 38 Mich. 430.   *Barnwell* v. *Wofford,* 67 Ga. 50.
*Gilliam* v. *McCormack,* 85 Tenn. 597.   In this case there was
evidence that the fund now in the hands of the trustees under
the bark contract amounts to about $30,000, and it is expected
that it will yield in all nearly $60,000; but it is left wholly un-
certain when the cutting of the bark will be completed; and all
.that appears is that there was evidence tending to prove that
the other party to the contract, upon whose diligence both the
amount to be realized and the time for such realization must
depend, has acted reasonably in cutting the bark, and it is for his
interest to do so in the future.   The notes amount to $50,000;
and it is manifestly wholly conjectural whether this fund will be
sufficient to pay them or, if so, when that result can be reached;
and in the meantime, as against this fund, by the terms of the
trust agreement, interest has been running upon these notes
since their respective maturity in 1903, at the rate of $3,000 per
year, so that the amount due upon them is likely soon to exceed
the probable proceeds of the security.

It is to be observed moreover that the only specific right to
hold this fund is that given by the trust agreement of March 17,
1903, between Van Tassel, the trustees, and the holders of the
notes.   .This trust is indeed declared to be " for the payment of
the principal and interest of said notes "; but it also provides
that " any dividend or payment received by " the holders of the
notes upon them " from the said Tanners Leather Company or
from said William F. Kimball shall be duly credited upon the
same."   The secured creditors have acquired in the proceeds of
the bark contract only the rights which are given by this agree-
ment; and the effect of this provision is to give them the right
to hold only so much of such proceeds as may be necessary, with
what they shall have been able to receive from the Tanners
Company and from Kimball, to make up full payment of their
notes with interest.   This is, accordingly, the only right of which
the unsecured creditors of the corporation could in any event re-
quire them to avail themselves; and that consideration is fatal to
the claim made here by the Atlantic Bank.   We do not mean
that the petitioner, as representing the unsecured or general cred-
itors of the corporation, would not have a good cause of action at
law against Kimball and Van Tassel for whatever he may be

obliged to pay upon these Van Tassel notes, but only that neither he nor such general creditors could in equity, even after paying these secured notes in full, take by subrogation any greater rights in the security than the rights which were secured to the original holders of the notes. *Simpson* v. *Thompson*, 3 App. Cas. 279. *Knapp* v. *Sturges*, 36 Vt. 721. *Leavitt* v. *Canadian Pacific Railway*, 90 Maine, 153. *Walsh* v. *McBride*, 72 Md. 45. *Franklin Savings Bank* v. *Taylor*, 131 Ill. 376. *Campan* v. *Molle*, 124 Cal. 415. *Swarts* v. *Siegel*, 117 Fed. Rep. 13. *Gray* v. *Taylor*, 14 Dick. 621. Accordingly, the general creditors themselves have no right in equity to compel the holders of the Van Tassel notes, to their certain delay and risk and with the uncertainty of the final result, to resort to the proceeds of the bark contract before taking a dividend from the estate of the maker of their notes, whom they have the right to regard as the principal debtor. Neither the petitioner nor the general creditors have, or could acquire by subrogation, any beneficial right in the proceeds of the bark contract. They have only the right, through the petitioner, of resorting to the general assets of Kimball and Van Tassel for what the petitioner may have to pay upon the Van Tassel notes.

Accordingly the exceptions of the Atlantic National Bank to the master's report should be overruled, and a final decree entered instructing the petitioner to divide the assets in his hands, less his necessary expenses and the costs of the suit, ratably among the creditors of the Tanners Leather Company as these have been found by the master.

*So ordered.*