FARISH CARTER et al. plaintiffs in error, vs. MARTHA NEAL, adm'or., &c., defendant in error.

[1.] It is not a fraud in stockholders of a company not responsible for the company's debts, to ask the passage of an act to enable the company to issue bonds, holding the private property of stockholders liable; and a stockholder may advance money on such bonds and the transaction will be good, if free from fraud.

[2.] The misconduct of trustees, for the sale of property, cannot affect the rights of a creditor interested in the sale.

[3.] An allegation in a bill, that trustees for the sale of property, will pursue their duty to a certain extent, but afterwards the bill alleges, upon conjecture, and assigns no fact or circumstance to warrant it, that they will do an act grossly wrong, such fanciful allegation is insufficient to raise an equity.

[4.] The indebtedness of a party making bona fide a deed of trust, and who

makes no provision for the payment of prior debts, is not fraud.

[5.] The doctrine of two funds applies only to cases where contending creditors have a common debtor.

[6.] To entitle one creditor to be subrogated to the rights of another creditor, the former must have satisfied the latter his demand so as to relieve him from trouble, expense and risk.

[7.] A complainant cannot have a decree that money raised from the property of a defendant shall be handed to her to pass over to a creditor at whose instance the money was raised, and assume his place in regard to enforcing a demand, already satisfied, against private property of stockholders.

Equity, from Muscogee county.    Decided by Judge WOR-RILL, January, 1858.

The bill of exceptions in this case was filed to the decision of the Court below, in refusing to dissolve an injunction which had been granted under the following circumstances:

Martha Neal, as administratrix of Joseph Neal, filed her bill for an injunction to restrain Farish Carter, Raphael J. Moses, and Randolph L. Mott, from selling property comprised in a deed under which they were trustees. She stated in her bill that Joseph Neal, since deceased, had sold cotton to the Coweta Falls Manufacturing Company, for which the company gave him their promissory note for $5,655 58-100; that various payments had been made on the note but that there still remained $3,830 60-100 due thereon. That the company had procured an Act to be passed by the Legislature authorizing them to issue bonds to the amount of $30,000, the same to be secured by a deed of trust or mortgage on the real or personal property of the company, provided the private property of the stockholders should be responsible for redemption of the bonds in proportion to the stock held by them. That in 1852, the company in pursuance of the Act, issued their bonds, of which Farish Carter became the purchaser to a large amount. That the bonds have been due and unpaid for three years. That the company, to secure the payment of the said bonds at maturity, executed their deed of trust to Raphael J. Moses, W. A.

Redd, and H. H. Epping, by which they conveyed them all the real and personal property of the company with some nominal exceptions, in trust, under notice of default from said bondholders, to sell the same or so much thereof as might be necessary to pay said bonds. That no provision was made in the deed for the satisfaction of the then existing debts of the company. That three years before, the trustees had been notified of default under the deed, and repeatedly advertised the trust property for sale but had failed to sell the same. That two of the trustees, Redd and Epping, refused to act as trustees, and that Randolph L. Mott pretended to be substituted in their stead, and that Moses and Mott as such trustees, had advertised the property for sale in November, 1856, and would, unless enjoined by the order of the Court, apply the proceeds of the sale to the payment of the bonds. That the company was insolvent and the said deed of trust fraudulent, and void as against Joseph Neal, who was an existing creditor of the said company at the time of the execution of the said trust deed. That Farish Carter had, by virtue of the Act of the Legislature under which said bonds were issued, a double security, one against the property comprised in the deed of trust and the other against the stockholders of said company in proportion to the stock held by them, that Carter owned stock to the amount of $10,000 and that the stockholders were responsible men. That the plaintiff could only look to the assets real and personal of said company for payment of its indebtedness to him and that by the terms of the charter the stockholders were not held individually responsible for the payment of the debts of the company, and that Carter, although he had such other security, was proceeding with the trustees, to sell the property under the provisions of the trust deed.

An injunction was granted in November, 1857, as prayed by the above bill.

The plaintiff amended her bill by stating that a part of

the property contained in the trust deed had been sold by the Sheriff of the county of Muscogee under a *fi. fa.* in favor of Farish Carter, and that John L. Mustian became purchaser at from $8,000 to $9,000 ; that at the sale the Sheriff declared that the same was sold subject to the incumbrance of the bonds; that the same was worth between $19,000 and $20,000 free from all incumbrances. She therefore prayed that the said trustees might be required first to sell the factory buildings, and lot on which they were situated, before selling any other of the property contained in the deed, and apply the proceeds in satisfaction of the bonds. That the said trustees might be required to pay her the amount of the note, which amount she would hand over to Farish Carter and that Farish Carter might be required to assign to her such an amount of said bonds as would amount to said debt, and that the stockholders might be required to pay such bonds so to be transferred to her.

Farish Carter, by his answer, denied that bonds to the amount of $30,000 had been issued, but said that bonds to the amount of $10,000 only had been issued, and that he had by subsequent purchase, become the holder of the whole. He also stated that if the stockholders were individually liable for the payment of the bonds, it was only after the proceeds of the property comprised in the trust deed had been exhausted.

Raphael J. Moses, one of the trustees, also filed his answer, admitting most of the facts stated in the bill of complaint and setting forth the reasons why the property had not been sold before. He also stated that Mott, the other trustee, had never acted as such, and denied all collusion or combination to wrong or injure the complainant.

Upon filing their answers the defendants moved to dissolve the injunction, on the ground that there was no equity in the bill to authorize the same, and that if there was any equity in the bill it had been sworn off by the answers.

The Court refused to dissolve the injunction, but modified

it by ordering that the injunction should be so far dissolved as to permit the trustees to proceed to sell the property they had advertised for sale, and that the money arising from the sale, should be held by the trustees subject to the further order of the Court.

To this order of the Court the defendants excepted.

DOUGHERTY; and HOLT, for plaintiffs in error.

B. HILL; and DENTON, *contra.*

*By the Court.*—McDONALD J., delivering the opinion.

The grounds of complaint on which the complainant founds her equity, are

1st. That the company, the "Coweta Falls Manufacturing Company," applied to the Legislature and obtained authority to issue its bonds to the amount of $30,000, to be secured by deed of trust or mortgage.

2d. That the company issued bonds to that amount and the defendant, Carter, became the purchaser of bonds to the amount of ten thousand dollars, which have been due and unpaid for a number of years.

3d. That the company made a deed of trust conveying all its property, with inconsiderable exceptions, to trustees named in the bill, to secure the payment of the bonds.

4th. The trustees were notified several years ago that the company had made default in payment and were required to sell. They repeatedly advertised the property for sale and as repeatedly failed to sell.

5th. Two trustees have declined to act and R. L. Mott pretends to act as a substitute, and they have advertised the real and personal property to be sold under the trust deed, on the first Tuesday in November, 1856, (1857?) and will sell, unless enjoined, and apply the proceeds of sale, first to the bonds, and then to some one else, to whom the said

company is in no wise indebted, under some private arrangement unknown to the complainant.

6th. The said company is insolvent, and the trust deed is fraudulent as to complainant's intestate, who was a creditor of the company and no provision was made for the payment of his debt.

7th. That the defendant Carter has a double security, one, the liability of the company; and the other, the liability of the stock-holders.

8th. That Carter, at the time the bonds were issued was a stock-holder in the company to the amount of ten thousand dollars—the stockholders are all responsible men, and complainant can look only to the assets of the company, the charter exempting the private property of the stockholders from liability for the debts.

9th. The sale was frequently advertised, when property would have brought a fair value, but under one pretext or another, the sale was delayed, and if now sold, it will be at a ruinous sacrifice, because of the uncertain state of monetary matters, now existing.

10th. The bill was amended and charges that the Factory building was sold in 1855, at Sheriff's sale under a fi fa in favor of the defendant Farish Carter against the company, and Carter gave notice at the sale and before any bid was made, that the factory building and the lot were to be sold subject to the bonds.

11th. Under that notice John L. Mustian became the purchaser at $8,000 or $9,000, Mustian knowing that he was purchasing subject to the incumbrance of the bonds.

12th. That the said property was worth between $19,000 and $20,000 free from incumbrances. The bill prayed, that the complainant may be subrogated to the rights of the bond creditors, that the trustees be required to hold up the surplus of the proceeds of the sale, to be applied to the payment of the indebtedness of complainant.

That the trustees be required to sell the factory buildings and the lots whereon they are situated, before selling any other property in the said deed and *apply* the same to the payment of the bonds.

That the trustees may be required to pay to complainant from the proceeds of the sale an amount equal to her debt, which amount she may pay to Carter, and that Carter may be required to assign, and transfer to complainant as administratrix, bonds to the same amount, and that the stockholders be decreed to pay them, and for other relief.

[1.] There is nothing fraudulent in the procurement of the act of the Legislature to authorize the company to issue bonds on the security of a deed of trust or mortgage. It was no doubt done to facilitate the obtainment of money for the use of the company. If obtained, and appropriated, *bona fide* to the use of the company, it could not affect injuriously the rights of pre-existing creditors. But if the effect had been adverse to their interest, if it was without fraud, it could be no ground of complaint. It must in such case, be attributed to the consequences of risk, or mistaken enterprise.

If the transaction was without fraud there could be no objection to a stockholder advancing money, as an individual, on securities authorized by the law of the land.

[2.] The bill shows, that the creditor several years ago notified the trustees, to whom the greater part of the property had been conveyed in trust for the payment of the bonds issued by the company, that the company had made default in payment, and that he required them to sell and that the trustees repeatedly advertised the property for sale and as frequently failed to sell.

This alleged misconduct of the trustees, if it be misconduct cannot impair the rights of the creditor to urge upon them the execution of their duty, and to receive the amount to which he is entitled, when the sale is made.

[3.] The allegation that Randolph L. Mott pretends to have been substituted in place of a trustee who has declined acting,

Carter vs. Neal.

and that the trustees have advertised the . real and personal property described in the deed of trust to ˙ be sold, and that it will be sold if the sale be not enjoined, and that the proceeds of the sale be first applied to the payment of the bonds outstanding, and the balance, after the said payment, to some one individual or individuals to whom the said company is in no wise indebted under some private agreement between the said individual or individuals and the trustees, which is unknown to the complainant, presents no equity against the bond creditor. The complainant does not allege that Mott has not been actually and legally constituted a trustee as a substitute for one of those who has declined acting. If the trustees proceed to sell and pay the creditor the amount of his bonds, it is their duty to do it, and if they abuse their trust, in the manner suggested, afterwards, they are responsible to whomsoever they may injure thereby; but the creditor is not to be delayed by such a suggestion. The allegation is supported by no fact, and as the complainant has stated it, must be conjectural altogether. A party cannot by his own fancies, create an equity for himself.

[4.] That the complainants intestate was a creditor of the company at the time of the execution of the deed of trust and that no provision was made for the payment of his debts, does not infect the transaction with fraud. It was a deed executed for a valuable and sufficient consideration, fairly paid, and expressly authorized by Act of the Legislature. This court has held that a debtor may, by a mortgage, prefer one creditor to another. The principle for which the counsel for defendant in error, seems to contend, applies entirely to voluntary conveyances, for consideration of blood, post nuptial marriage settlements, and the like. But it has never been held that a person may not, *bona fide*, create a new debt and give a lien on his property to secure its payments, without making provision for paying all he owes at the time.

[5.] The doctrine that a creditor has two funds to which he may resort, does not apply to a case like this. The funds

must be the funds of a common debtor. The Coweta Falls Manufacturing Company owes both debts. The private property of the individual stockholders is responsible for the payment of the bonds held by Carter, and they may become his debtors. It is not liable, and cannot be made subject to the payment of the debt of the complainant. The stockholders are not the common debtors of both creditors. The private property is made responsible for the bond debts to enable the company to offer a higher security to induce capitalists to take them. The stockholders are therefore securities. They are so much so, that they have an equity to compel bond-holders to exhaust the property in trust for their payment before they can resort to them. *Aldrich vs. Cooper et al.* 8 *Vesey* 388 *;* *Kendal exparte,* 17 *Vesey* 514 *; Dorr vs. Shaw,* 4 *John. Ch. Rep.* 19 *; Hayes vs. Ward, Ib.* 132.

That the Defendant, Carter, was a stockholder in the company at the time bonds were issued does not give the complainant an equity. A stockholder who advances his money on the security afforded by the statute, is as much entitled to protection as any one else. The company is one person in law and he another. If the company prove insolvent, he must sustain a ratable loss with the other stockholders, but he is in law and equity entitled to the security as far as it goes.

The misconduct of the trustees, in not selling when they ought to have sold, and probable loss likely to accrue to creditors in consequence thereof cannot affect the rights of the bond-holders.

The notice given at the Sheriff's sale by Carter, does not affect his rights upon the bonds. He gives the legal notice to the trustees to raise his money, and he cannot be delayed, to litigate at the instance of creditors who offer him no indemnity, and who are competent to litigate for themselves. The property, it is alleged, was sold under a fi. fa. in favor of Farish Carter, against the company. Carter held bonds under a deed of trust and although he might have had a resort in re--

spect to them, upon the private property of the stockholders, he had a right, to retain all the security the law would entitle him to, for the payment of his bonds; and one of the securities which he could be entitled to, was, to have the company's property sold subject to his older lien.   If he continued to be a stockholder, as the bill alleges, the greater the interest it was to him, to have it so sold, to save his individual property from the ultimate ratable payment of the bonds.

The price paid for the property by John L. Mustian, the purchaser, and the value of it free from incumbrances, can have no influence on the present enquiry.

[6.] There is nothing in the bill which entitles this complainant to be subrogated to the rights of the defendant Carter. Carter has not received his money.. The complainant has neither paid nor offerred to pay his debt in order to claim to be subrogated to his rights.   But if she had, she could not in that way be subrogated to his rights so as to convert her debt against the company, into a demand having the security of the private property of the stockholders for, its payment.— But if the defendant, Carter, has a remedy against the property sold under his fi. fa, by reason of the circumstances under which the sale was made, which she has not the power to use to subject that property to the payment of her debt, she might perhaps by discharging his debt entitle herself to be substituted in his stead, and proceed in that way to send the bonds against that property, but she has certainly no equity to restrain, and for her convenience, subject him to delay and expense which she may be unwilling to encounter. We do not say that she may not use the same remedy to subject that property to the payment of her debt, if she fails otherwise to get it.   We pass no judgment on that.

[7] The complainant has no right to ask a decree that money raised from the sale of the company's property, should be paid to her, to hand to Carter and claim therefor an assignment of bonds of equal amount that she may be enabled to turn around and collect them from the private property of the

stockholders. Neither the object, nor the process proposed to be used in its accomplishment, will be countenanced by a Court of Equity. It will be the transfer of a claim satisfied in law.

It is the duty of the trustees to return any surplus of money in their hands remaining from the sale, after paying the bonds, for the payment of the company's debts, and the allegation in the bill founded on conjecture only, is not sufficient to warrant the Court in granting an injunction restraining them from doing an act forbidden by their duty.

It is unnecessary to refer to the answers further than to say that their denials of many of the allegations in the bill, overturn much of what the complainant conceived to give her an equity against the defendants.

Judgment reversed.