13113

PACE v. STILL *ET AL.*

(158 S. E., 120)

May, 1930.

Mr. *L. K. Clyde* for J. F. Gallivan, appellant, and *Mr. B. F. Martin* for Leroy Mahaffey, appellant,

*Messrs. Mann & Plyler, Hodges & Leatherwood,* and *Haynesworth & Haynesworth,* for respondent,

April 10, 1931.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action to foreclose a mortgage given by the defendant Ethel Still to the plaintiff J. L. Pace, dated April 9, 1928, to secure the payment of a note of Ethel Still and her husband, R. B. Still, to J. L. Pace, dated April 9, 1928, payable April 9, 1929, for $4,000, with interest from date at 8 per cent. per annum, payable semiannually, and attorney's

fees. The mortgage covered two tracts of land, aggregating about 10 acres, in the suburbs of the City of Greenville.

The circumstances leading up to the execution of this mortgage, and which have given rise to the present controversy, mainly between Pace and the defendants Gallivan and Leroy Mahaffey, are somewhat complicated and may be thus detailed:

The defendant Leroy Mahaffey in April, 1926, was the owner of the two tracts covered by the mortgage of Mrs. Still to Pace, above referred to; on April 6, 1926, he conveyed the property to R. B. Still, husband of Mrs. Still, at a fixed price, and took from R. B. Still a note for $6,000, dated on that day, payable on April 6, 1927, with interest from date at 8 per cent. per annum, and secured it by a mortgage upon the two tracts above referred to. Later, on July 31, 1926, R. B. Still conveyed the property to his wife, Ethel Still, who assumed payment of the $6,000 mortgage which R. B. Still had given to Leroy Mahaffey.

On April 19, 1926, Leroy Mahaffey purchased certain property at Sans Souci (near Greenville), from one Geo. R. Koester, at approximately $8,500. He paid a part cash and borrowed from the defendant Gallivan $5,900, with which to complete the purchase. He gave Gallivan a note for this loan, and secured it by a mortgage upon the Koester property and an assignment, as additional security, of the note and mortgage which R. B. Still had given to Leroy Mahaffey. This assignment was in writing, dated April 19, 1926, and duly recorded on the same day. The note which Mahaffey had given to Gallivan for $5,900 fell due on April 19, 1927; upon it nothing had then been paid. At some time, not definitely appearing, but probably in the early part of 1928, Gallivan delivered to B. C. Mahaffey, father of Leroy, for collection, the $6,000 note and mortgage which Still had given to Leroy and which he had assigned to Gallivan, retaining in his possession the $5,900 note and mortgage on the Koester place which Leroy had given to him. It is not

entirely clear, but it appears that B. C. Mahaffey delivered the $6,000 note and mortgage to D. B. Leatherwood, a member of the law firm of Hodges & Leatherwood, for collection. The Stills were being pressed for payment of the $6,000 mortgage, and at a conference held in the office of Hodges & Leatherwood, at which Leatherwood, R. B. Still, B. C. Mahaffey, Leroy Mahaffey, and Pace were present, in April, 1928, it was agreed that Pace should lend to Mr. and Mrs. Still $4,000, upon their note for that amount secured by a mortgage upon the two tracts to be executed by Mrs. Still who held the title, and a release by Leroy Mahaffey of the $6,000 mortgage which had been given by R. B. Still to Leroy Mahaffey, in favor of the proposed mortgage for $4,000 to be given to Pace, the proceeds of the loan to be paid to Leroy Mahaffey and applied to the $6,000 mortgage. It seems to have been overlooked that the $6,000 mortgage had, as stated, been assigned to Gallivan as collateral security to the note for $5,900 which he had given to Gallivan, although the assignment of the $6,000 mortgage by Leroy Mahaffey to Gallivan was upon record. The note for $4,-000 was executed by Mr. and Mrs. Still to Pace as also the mortgage by Mrs. Still to Pace; a release of the $6,000 mortgage in favor of Pace was executed by Leroy Mahaffey; Pace gave check for $4,000 payable to Hodges & Leatherwood who indorsed it to Leroy Mahaffey who paid it to Gallivan, who credited it upon the $5,000 note and mortgage which Leroy Mahaffey had given him, as of April 19, 1928.

Mr. and Mrs. Still having failed to pay the note and mortgage of $4,000 which had been given to Pace, the present action for foreclosure was instituted on October 23, 1929, the plaintiff claiming the first lien upon the two tracts of land; the complaint was in the usual form.

The defendant Gallivan answered claiming the first lien upon the property under the $6,000 mortgage assigned to him by Leroy Mahaffey, upon which he acknowledged pay-

ments of $480 on April 5, 1927, and $4,000 on May 12, 1928, and demanding judgment of foreclosure.

The plaintiff replied to the answer of Gallivan claiming that Gallivan authorized and ratified the release executed by Leroy Mahaffey in favor of the Pace mortgage and is estopped from denying its validity; also, that Gallivan held the $6,000 mortgage as collateral security to the $5,900 mortgage which Leroy Mahaffey had given him and that he should be required to exhaust his primary security, the mortgage upon the Koester property before resorting to the property covered by the plaintiff's $4,000 mortgage.

The defendant Leroy Mahaffey answered the complaint denying the material allegations and putting the plaintiff to proof; he denied that he had executed a release of the $6,000 mortgage to Pace and re-enforced the claim of Gallivan to a first lien upon the Still property under his assignment of that mortgage. The interest which Leroy Mahaffey had in the establishment of a first lien to Gallivan partially repudiating the waiver which he executed to Pace, may be thus explained: A sale of the Still property under foreclosure would certainly realize enough to pay the balance due to Gallivan, some $2,300, upon the mortgage of $5,900 which Mahaffey had given to him, thus releasing the Koester property to Mahaffey free of all encumbrances; and, further, the sale of the Still property would not bring enough to satisfy Gallivan's preferred claim and the Pace mortgage; there would result a deficiency judgment in favor of Pace against Still for which Mahaffey would be liable to Still by reason of his deceit in obtaining the loan from Pace upon the implied representation that he had the right to execute the waiver of the $6,000 mortgage to him; against this claim Mahaffey would have the right to set up his homestead exemption to the extent of $1,000. It is not difficult therefore to see how greatly Mahaffey was interested in sustaining the contention of Gallivan and in defeating Pace's right to subrogation or to the benefit of the two-fund doctrine, by which

Gallivan would be forced to exhaust the Koester property before resorting to the Still property.

The case was referred generally to the master, who filed a report holding:

1. That by the agreement of Mahaffey to subordinate the $6,000 mortgage of Still to the mortgage from Still to Pace, securing the $4,000 loan, and the execution of the release, Pace acquired an equity superior to that of Mahaffey, namely, to require Mahaffey to pay Gallivan out of the Koester property the balance due to him;

2. That under the two-fund doctrine, Pace had an equity to compel Gallivan to exhaust the Koester property over which he held the $5,900 mortgage upon which $4,000 had been paid, before resorting to the Still property;

3. That Gallivan, in appointing Mahaffey his agent to collect the $6,000 mortgage of Still to Mahaffey; placing it in his custody and accepting the $4,000 payment, was bound by the act of Mahaffey in waiving the priority of the mortgage in favor of the mortgage of $4,000 to Pace;

4. That in the event of the establishment of Gallivan's mortgage as a first lien upon the Still property, upon payment by Pace of the balance due Gallivan upon the $5,900 mortgage, he would be subrogated to the rights of Gallivan therein;

5. That Mahaffey, being the owner of the $6,000 mortgage, pledged to Gallivan, had the legal title thereto with the right to release the lien in favor of Pace, and that Gallivan has no right to complain of his exercise of that right unless he can show that he has been damaged thereby.

He therefore recommended foreclosure and sale of the Still property, the proceeds, after payment of costs, to be applied first to the Pace mortgage and then to the Gallivan mortgage.

Upon exceptions to this report the matter came on for hearing before his Honor Judge Townsend, who filed a decree, dated May 5, 1930. At the hearing his Honor or-

dered that Gallivan bring into Court the note and mortgage given by Leroy Mahaffey to him for $5,900, dated April 19, 1926, and foreclose same in this action. He does not in his decree discuss any of the positions taken by the master, above enumerated, except the second, and announces his conclusions thus:

"I find that the plaintiff and Gallivan are creditors of a common debtor and that Gallivan has two funds to which to look for the payment of the amount due him, and that Pace has only one fund. The right of the plaintiff, as a junior creditor having a junior mortgage lien on the Still tract alone, to require Gallivan who holds a senior mortgage lien on that lot, and also on the Mahaffey lot, to exhaust the latter security before resorting to the former, is not affected by the circumstance that the assignment of the Still mortgage to Gallivan was as collateral security to the note and mortgage then given by Mahaffey to Gallivan to secure the same debt."

He accordingly held that Pace was entitled to require Gallivan to exhaust the Koester property upon which he held the $5,900 mortgage which had been reduced by the payment of the money obtained by Still from Pace, and decreed foreclosure of both mortgages, directing that the Koester property be sold first and the proceeds of sale applied to the balance due to Gallivan on the $5,900 mortgage and that the Still property be next sold, the proceeds of sale to be applied to any balance that might remain due to Gallivan upon the $5,900 mortgage and the surplus applied to the $4,000 mortgage held by Pace.

From this decree Gallivan and Leroy Mahaffey have appealed upon various grounds.

We propose to discuss first that part of the decree that sustains the right of Pace, under the two-fund doctrine, to force Gallivan upon the Koester property before resorting to the Still property.

The two-fund doctrine is thoroughly established and is

correctly stated in the quotations set forth in the decree. 18 R. C. L., 455; *Ross v. Duggan,* 5 Colo., 85; *Alston v. Munford,* 1 Brock, 266, Fed. Cas. No. 267; *Clark v. Wright,* 24 S. C., 526; 3 Pom. Eq. Jur. § 415.

The obstacle to its application in the present case is that while there is a common debtor the pieces of property upon which the rule is desired to operate do not belong to this common debtor. Unquestionably we think that Still was a debtor to Gallivan to the extent of the balance unpaid upon the $6,000 mortgage which had been assigned to Gallivan as collateral security and upon which payments had been made; he was also a debtor to Pace upon the $4,000 mortgage which was executed at the time the loan of $4,000 from Pace to Still was negotiated. One piece of property, the Koester place, however, belonged not to Still, the common debtor, but to Mahaffey; the other piece of property, the Still tracts, aggregating some 10 acres belonged to Still. This variance, as we understand the authorities, effectually negatives the right to the application of the two-fund doctrine.

In 2 Story, Eq. Jur. (14th Ed.) § 867, it is said:

"In order to invoke the doctrine of marshaling, the lien debtor must be a common one—both sources of payment must belong to a common debtor. In order for a creditor who had a lien upon one fund to be entitled to substitution to the right of a creditor who had a lien upon that and another fund, it was a necessary condition, among other things, that both funds upon the prior creditor's claim was secured should be the property of the same debtor.  *  *  *"

In 26 Cyc., 932, it is said:

"The rule of marshaling does not prevail except where both funds are in the hands of the common debtor of both creditors." Citing cases from Alabama, Arkansas, Connecticut, Georgia, Illinois, Indiana, Kentucky, Maryland, Nebraska, New York, Pennsylvania, Tennessee, Texas, Virginia, and England.

See, also, 38 C. J., 1378 where other cases sustaining this rule are cited.

In *Peery's Adm'r v. Elliott,* 101 Va., 709, 44 S. E., 919, 920, it is said:

"For the principle to be applicable, both sources of payment must belong to a common debtor."

In *Birch River Boom & Lumber v. Glendon Room & Lumber Co.,* 71 W. Va., 139, 76 S. E., 167, 168, it is said:

"To invoke the doctrine of marshaling securities both sources of payment must belong to a common debtor."

In *Citizens' State Bank v. Iddings,* 60 Neb., 709, 84 N. W., 78, it is held:

"The doctrine of marshaling securities applies only to cases in which two or more creditors are seeking to satisfy their claims out of property of the same common debtor."

See, also, *Robinson v. Lehman, Durr & Co.,* 72 Ala., 401; *Stevens v. Church,* 41 Conn., 369; *Carter v. Neal,* 24 Ga., 346, 71 Am. Dec., 136; *Trentman v. Eldridge,* 98 Ind., 525; *Assignment of Hobson,* 81 Iowa, 392, 46 N. W., 1095, 11 L. R. A., 255; *Woollen v. Hillen,* 9 Gill. (Md.), 185, 52 Am. Dec., 690; *Johns v. Reardon,* 11 Md., 465; *Lee v. Gregory,* 12 Neb., 282, 11 N. W., 297; *Stewart v. Stewart,* 207 Pa., 59, 56 A. 323; *Carter v. Tanners' Leather Co.,* 196 Mass., 163, 81 N. E., 902, 12 L. R. A. (N. S.), 965; Note 39 L. R. A. (N. S.), 1000.

The question arose and was similarly decided in the cases of *South Carolina Mfg. Co. v. Bank,* 6 Rich. Eq., 227; *Norman v. Norman,* 26 S. C., 41, 11 S. E., 1096.

From the view we take of the merits of the case we do not deem it necessary to discuss the 3, 4, and 5 findings of the master above set forth, as to which we have some doubts.

The case in our opinion should be decided regardless of the principle of subrogation and the two-fund doctrine upon this ground:

The defendant Leroy Mahaffey was guilty of a legal, if not an intentional, fraud upon Pace, in the deception practiced upon him, in the implied representa-

tion that he had authority to execute the waiver of the lien of the $6,000 mortgage in favor of the $4,000 mortgage upon which he obtained the loan for Still upon the Still property. As we have indicated above, the effect of sustaining the contention of Gallivan and Mahaffey that Pace has not the right, under the two-fund doctrine, to force Gallivan upon the Koester property before resorting to the Still property, would be to relieve the Koester property, which belongs to Mahaffey entirely from the debt to Gallivan which he is under obligation to pay and to seriously impair Pace's recourse against him for the damage sustained by his deception, to the extent of the homestead exemption—all the result of the deception of Mahaffey which induced Pace to part with his money. He should not be allowed to reap a substantial benefit from his own wrong and be entirely relieved from a debt which he should pay, the balance due Gallivan upon the $5,900 mortgage. He should be held estopped from denying the right of Pace to the protection practically identical with the relief which would be afforded by an application of the two-fund doctrine. This will not at all prejudice the interests of Gallivan, as he is amply secured by his first lien upon the Koester property and a first lien upon the Still property for what may remain unpaid after application of the proceeds of the sale of the Koester property.

Strictly speaking, we do not think his Honôr was justified in ordering Gallivan to present for foreclosure in this action his $5,900 mortgage on the Koester property. It was not in the case by any proper pleading or evidence and no opportunity was afforded Mahaffey to resist its foreclosure if he had any just grounds therefor.

(Note.—We have referred constantly to "Still;" whenever it occurs and "Mrs. Still" would be more appropriate, the amendment will be considered as having been made.)

We think therefore that the judgment of this Court should be that the decree of the Circuit Court be modified as herein indicated, and that the case be remanded to that Court for

such further orders as may be consistent with the conclusions herein announced, with leave to the plaintiff to so amend his complaint as to bring the matter of foreclosing the Gallivan mortgage upon the Koester property into this case. It is so ordered and adjudged.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.