13500

PACE v. STILL *ET AL.*

(166 S. E., 494)

*Mr. L. K. Clyde* for J. F. Gallivan, appellant,

*Mr. B. F. Martin* for Leroy Mahaffey, appellant,

*Messrs. Mann & Plyler, Haynsworth & Haynsworth* and *Hodges & Leatherwood,* for respondent,

November 1, 1932.

On rehearing November 15, 1932. The opinion of the Court was delivered by MR. JUSTICE BONHAM.

This case came to this Court heretofore and the opinion is reported in 160 S. C., 28, 158 S. E., 120. We take from that opinion the statement of facts upon which that appeal was heard:

"This is an action to foreclose a mortgage given by the defendant, Ethel Still, to the plaintiff, J. L. Pace, dated April 9, 1928, to secure the payment of a note of Ethel Still and her husband, R. B. Still, to J. L. Pace, dated April 9, 1928, payable April 9, 1929, for $4,000.00, with interest from date at 8 per cent. per annum, payable semi-annually, and attorney's fees. The mortgage covered two tracts of land, aggregating about 10 acres, in the suburbs of the City of Greenville.

"The circumstances leading up to the execution of this mortgage, and which have given rise to the present controversy, mainly between Pace and the defendants Gallivan and Leroy Mahaffey, are somewhat complicated and may thus be detailed:

"The defendant, Leroy Mahaffey, in April, 1926, was the owner of the two tracts covered by the mortgage of Mrs. Still to Pace, above referred to; on April 6, 1926, he conveyed the property to R. B. Still, husband of Mrs. Still, at a fixed price, and took from R. B. Still a note for $6,000.00, dated on that day, payable on April 6, 1927, with interest from date at 8 per cent. per annum, and secured it by a mortgage upon the two tracts above referred to. Later, on July 31, 1926, R. B. Still conveyed the property to his wife, Ethel Still, who assumed payment of the $6,000.00 mortgage which R. B. Still had given to Leroy Mahaffey.

"On April 19, 1926, Leroy Mahaffey purchased certain property at Sans Souci (near Greenville), from one Geo. R. Koester, at approximately $8,500.00. He paid a part cash and borrowed from the defendant, Gallivan, $5,900.00, with which to complete the purchase. He gave Gallivan a note for this loan, and secured it by a mortgage upon the Koester property and an assignment, as additional security,

of the note and mortgage which R. B. Still had given to Leroy Mahaffey. This assignment was in writing, dated April 19, 1926, and duly recorded on the same day. The note which Mahaffey had given to Gallivan for $5,900.00 fell due on April 19, 1927; upon it nothing had been paid. At some time, not definitely appearing, but probably in the early part of 1928, Gallivan delivered to B. C. Mahaffey, father of Leroy, for collection, the $6,000.00 note and mortgage which Still had given to Leroy and which he had assigned to Gallivan, retaining in his possession the $5,900.00 note and mortgage on the Koester place which Leroy had given to him. It is not entirely clear, but it appears that B. C. Mahaffey delivered the $6,000.00 note and mortgage to D. B. Leatherwood, a member of the law firm of Hodges & Leatherwood, for collection. The Stills were being pressed for payment of the $6,000.00 mortgage, and at a conference held in the office of Hodges & Leatherwood, at which Leatherwood, R. B. Still, B. C. Mahaffey, Leroy Mahaffey, and Pace were present, in April, 1928, it was agreed that Pace should lend to Mr. and Mrs. Still $4,000.00, upon their note for that amount secured by a mortgage upon the two tracts to be executed by Mrs. Still who held the title, and a release by Leroy Mahaffey of the $6,000.00 mortgage which had been given by R. B. Still to Leroy Mahaffey, in favor of the proposed mortgage for $4,000.00 to be given to Pace, the proceeds of the loan to be paid to Leroy Mahaffey and applied to the $6,000.00 mortgage. It seems to have been overlooked that the $6,000.00 mortgage had, as stated, been assigned to Gallivan as collateral security to the note for $5,900.00, which he had given to Gallivan, although the assignment of the $6,000.00 mortgage by Leroy Mahaffey to Gallivan was upon record. The note for $4,-000.00 was executed by Mr. and Mrs. Still to Pace as also the mortgage by Mrs. Still to Pace; a release of the $6,-000.00 mortgage in favor of Pace was executed by Leroy Mahaffey; Pace gave check for $4,000.00 payable to Hodges

& Leatherwood who indorsed it to Leroy Mahaffey who paid it to Gallivan, who credited it upon the $5,900.00 note and mortgage which Leroy Mahaffey had given him, as of April 19, 1928.

"Mr. and Mrs. Still having failed to pay the note and mortgage of $4,000.00 which had been given to Pace, the present action for foreclosure was instituted on October 23, 1929, the plaintiff claiming the first lien upon the two tracts of land; the complaint was in the usual form.

"The defendant Gallivan answered claiming the first lien upon the property under the $6,000.00 mortgage assigned to him by Leroy Mahaffey, upon which he acknowledged payment of $480.00 on April 5, 1927, and $4,000.00 on May 12, 1928, and demanding judgment of foreclosure.

"The plaintiff replied to the answer of Gallivan claiming that Gallivan authorized and ratified the release executed by Leroy Mahaffey in favor of the Pace mortgage and is estopped from denying its validity; also, that Gallivan held the $6,000.00 mortgage as collateral security to the $5,900.00 mortgage which Leroy Mahaffey had given him and that he should be required to exhaust his primary security, the mortgage upon the Koester property, before resorting to the property covered by the plaintiff's $4,000.00 mortgage.

"The defendant, Leroy Mahaffey, answered the complaint denying the material allegations and putting the plaintiff to proof; he denied that he had executed a release of the $6,000.00 mortgage to Pace and re-enforced the claim of Gallivan to a first lien upon the Still property under his assignment of that mortgage."

After the remittitur came down, both the defendant, Mahaffey, and the plaintiff, Pace, moved to tax the Supreme Court costs in his favor; the clerk of Court taxed them in favor of the respondent, Pace, which ruling was confirmed by the circuit Court, and an appeal from that order is also involved herein. The defendants, Mahaffey and Gallivan, petitioned for rehearing or modification of the opinion—on

grounds set out in the Transcript of Record—which petition was refused.

Acting upon what they construed to be the direction of this Court in the opinion in the former case to bring in the mortgage given to the defendant Gallivan by the defendant Mahaffey on the Koester place, the attorneys for plaintiff served an amended complaint, which differed from the original complaint only by the allegations contained in paragraphs 7, 8, and 9 of the amended complaint, which are in these words:

"Par. 7. That the defendants, Leroy Mahaffey and J. F. Gallivan, are also made parties to this action for the reason the defendant, J. F. Gallivan, appears from the record to be the owner and holder of a certain mortgage for $5,900.00 given by Leroy Mahaffey to J. F. Gallivan on the 19th day of April, 1926, and recorded in Mortgage Book 139, page 91, R. M. C. office for Greenville County, which mortgage covers the following described premises: (The Koester property.)

"Par. 8. That the note and mortgage held by J. F. Gallivan set forth in paragraph 7 of this complaint is past due. That plaintiff is informed and believes that the principal sum of said mortgage has been reduced to $2,300.00, but does not know the amounts of interest due on the same."

"Par. 9. That this case has been to the Supreme Court of South Carolina, and the Supreme Court held in its opinion handed down in April, 1931, 160 S. C., 28, 158 S. E., 120, that the defendant Gallivan should foreclose the mortgage he holds, which is described in paragraph 7 above (known as the Koester property) and apply the proceeds thereof to the debt due him by Mahaffey, and that he have a first lien thereafter on the property described in paragraph 2 of the complaint (known as the Still property), for any unpaid balance. The Supreme Court further held that the plaintiff have leave to amend his complaint and bring in the matter of foreclosing the Gallivan mortgage on the Koester property in this case.

"Under said opinion filed by the Supreme Court the plaintiff has the right and hereby requires the defendant Gallivan to bring in his mortgage over the Koester property and prove the amount due thereon and foreclose the same."

The defendants, Mahaffey and Gallivan, demurred to the complaint and moved to strike the same on numerous grounds, all directed to the proposition that the amended complaint does not state facts sufficient to show a cause of action or to show any equity with respect to the Mahaffey mortgage to Gallivan on the Koester lot, and, further, because the plaintiff does not allege that he has a lien upon the property covered by the Koester mortgage, or any interest in said mortgage, nor does he allege any invasion of his legal rights by this defendant, or that this defendant sustains any contractual or fiduciary relation to the plaintiff.

The order of Judge Rice overruling the demurrer to the amended complaint contains this statement:

"I have reviewed the entire record in the case, including the petition for a rehearing, which was denied. They make 'the law of the case.' The matter was argued before me at length and written arguments with authorities have also been filed. It appears to me, and I find that all questions raised by the demurrer, with the exception of one hereafter mentioned, have been settled by the Supreme Court in its opinion and in its refusal to grant the petition for a rehearing."

"The defendants, Mahaffey and Gallivan, contend that the Supreme Court was without authority to order the complaint amended and that it should have been amended by the circuit Court. The amended complaint is in the usual form for the foreclosing of a mortgage, and appears to be in accordance with the opinion of the Supreme Court. It appears that the Supreme Court ordered the amendment, and it is the law of the case, but if it should be construed differently there is no reason why the complaint should not be

amended at this time. At the hearing the plaintiff asked for an order allowing the amended complaint *nunc pro tunc.* It appears that this would be proper and not prejudicial to the defendants, and said order is hereby granted."

From this order the defendants, Mahaffey and Gallivan, appeal on many exceptions, most of which relate to the issues made and disposed of by the opinion in the former case and by the order denying the petition for rehearing.

Whether the Supreme Court had authority to order the amendment, and whether it did order it, have become academic questions in view of the order of the circuit Court *nunc pro tunc,* permitting the amendment, which order it did have power to grant.

The real issues for our determination in this appeal are whether the amended complaint states a cause of action in favor of the plaintiff, Pace, against the defendants, Mahaffey and Gallivan, in relation to the mortgage given by Mahaffey to Gallivan on the Koester property. The determination of this question involves the interpretation of certain language contained in the opinion of this Court in the original case relating to the issue of the two fund doctrine.

In the circuit decree in the other case it had been held that that doctrine did apply and that Pace, the plaintiff, had the right to compel Gallivan to exhaust his remedy under his Mahaffey mortgage on the Koester property before he came upon the Still property upon which Pace held the junior mortgage.

This holding of the circuit Court was overruled by this Court, Mr. Justice Cothran for the Court saying (160 S. C., 28, 158 S. E., 120, 122):

"The two-fund doctrine is thoroughly established and is correctly stated in the quotations set forth in the decree." (Citing them.)

"The obstacle to its application in the present case is that while there is a common debtor the pieces of property

upon which the rule is desired to operate do not belong to this common debtor. Unquestionably we think that Still was a debtor to Gallivan to the extent of the balance unpaid upon the $6,000.00 mortgage which had been assigned to Gallivan as collateral security and upon which payments had been made; he was also a debtor to Pace upon the $4,-000.00 mortgage which was executed at the time the loan of $4,000.00 from Pace to Still was negotiated. One piece of property, the Koester place, however, belonged not to Still, the common debtor, but to Mahaffey; the other piece of property, the Still tracts, aggregating some 10 acres, belonged to Still. This variance, as we understand the authorities, effectually negatives the right to the application of the two-fund doctrine."

The learned Justice then proceeds in this wise:

"The case in our opinion should· be decided regardless of the principle of subrogation and the two-fund doctrine upon this ground:

"The defendant, Leroy Mahaffey, was guilty of a legal, if not an intentional, fraud upon Pace, in the deception practiced upon him in the implied representation that he had authority to execute the waiver of the lien of the $6,-000.00 mortgage in favor of the $4,000.00 mortgage upon which he obtained the loan for Still upon the Still property.

"As we have indicated above the effect of sustaining the contention of Gallivan and Mahaffey that Pace has not the right, under the two-fund doctrine, to force Gallivan upon the Koester property before resorting to the Still property, would be to relieve the Koester property, which belongs to Mahaffey entirely from the debt to Gallivan which he is under obligation to pay and to seriously impair Pace's recourse against him for the damage sustained by his deception, to the extent of the homestead exemption—all the result of the deception of Mahaffey which induced Pace to part with his money. He should not be allowed to reap a substantial benefit from his own wrong and be entirely re-

lieved from a debt which he should pay, the balance due Gallivan upon the $5,900.00 mortgage. He should be estopped from denying the right of Pace to the protection practically identical with the relief which would be afforded by an application of the two-fund doctrine."

"Strictly speaking, we do not think his Honor was justified in ordering Gallivan to present for foreclosure in this action his $5,900.00 mortgage on the Koester property. *It was not in the case by any proper pleading or evidence and no opportunity was afforded Mahaffey to resist its foreclosure if he had any just grounds therefor.*" (Italics added.)

The whole language of the quotation, and especially the words which we have emphasized, show that it was not the intention of the opinion to pronounce final judgment on these issues, but to remand the case that they might be brought before the Court on proper pleadings containing proper averments. To hold otherwise would be to say that this Court might render final judgment upon issues never presented even to the circuit Court.

The final language of the opinion is this: "We think therefore that the judgment of this Court should be that the decree of the circuit Court be modified as herein indicated, and that the case be remanded to that Court for such further orders as may be consistent with the conclusions herein announced, with leave to the plaintiff to so amend his complaint as to bring the matter of foreclosing the Gallivan mortgage upon the Koester property into this case. It is so ordered and adjudged."

If the matter of foreclosing the mortgage on the Koester place was finally adjudicated by the opinion of this Court, why was it necessary to remand the case to the circuit Court for further orders in the case? No such orders have been taken, except the *nunc pro tunc* order allowing an amendment, and that does not specify in what particulars the complaint shall be amended.

The learned writer of the opinion in the first case had said that the two-fund doctrine was not applicable for the reasons pointed out by him. But he held that there was another doctrine identical in effect with the two-fund doctrine —which plaintiff should have the right to invoke. That doctrine is thus stated by one authority (*Carter v. Tanners' Leather Company*, 196 Mass., 163, 81 N. E., 902, note reported in 12 L. R. A. [N. S.], 965) and supported by others : "As is stated in the foregoing opinion, the equitable rule of marshaling assets is generally not applicable where the two funds to which creditors, or sets of creditors, may resort, are not derived from a common source, or are not in the hands of a common debtor. But where, *from certain independent equities, there arises the duty on the part of one debtor to exonerate the other* (italics added), some cases have held that the Courts will enforce that duty by subjecting the fund of the principal debtor."

But the main opinion holds, and annotations in the notes show, that this exception to the rule cannot be applied until the reason therefor is made to appear by the proof of the "independent equities" which justify it. Some cases hold that in such cases the interests of the principal debtor may not be ignored.

In the present case all that has been done was to give leave to the plaintiff to amend his complaint by showing the special and independent equities which entitle him to force Gallivan to exhaust the Koester property before coming against the Still property; to plead and prove the obligation, if any there be, why Gallivan should exonerate Pace. There must be some showing of how the senior and junior creditors of the Stills will be affected, how the Stills themselves will be affected, and even how Mahaffey will be affected. The opinion in the first case has not decided these matters; it could not because the mortgage on the Koester property was not before it. A careful inspection of the amended complaint discloses that it does not attempt to allege any

of the things which it is necessary for it to prove by competent evidence, to entitle itself to the benefit of this doctrine which is a departure from the two-fund doctrine. While the opinion in the first case impugns the conduct and motives of Mahaffey, it does not even suggest that Gallivan has done any act, or been a party to any act, for which he should be penalized. It is true that it does say: "This will not at all prejudice the interests of Gallivan, as he is amply secured by his first lien upon the Koester property and a first lien upon the Still property for what may remain unpaid after application of the proceeds of the sale of the Koester property."

This is a mere assumption of the value of the Koester property. There is nothing in the record upon which to predicate it, and it was never intended to exonerate plaintiff from alleging and proving such facts if he can. He was given the opportunity by his amended complaint to allege and prove the "independent equities" embodied in the statement in the opinion. It was never intended to deprive Mahaffey and Gallivan of their day in Court. The opinion expressly so states as to Mahaffey. It will not be denied that Gallivan is entitled to equal consideration. He may be able to show grave and important reasons why he should not be compelled now to foreclose the mortgage on the Koester property. He may be able to show that other persons have equities of equal or greater right than those of plaintiff.

The circuit Judge was in error in not sustaining the demurrer to the amended complaint on the grounds which challenge it for that it does not state a cause of action against Mahaffey and Gallivan in relation to the claim that Gallivan be forced to foreclose the mortgage he holds against the Koester property before he resorts to the Still property.

It is the judgment of this Court that the order appealed from be affirmed insofar as it permits the complaint to be amended *nunc pro tunc*. That it be reversed for that it did not sustain the demurrers to the amended complaint made

on the ground that it does not state any cause of action in favor of the plaintiff against the defendants, Mahaffey and Gallivan in relation to the claim that Gallivan be required to foreclose the mortgage on the Koester property given him by Mahaffey, and exhaust the proceeds of sale of that property before he have recourse to the Still property. The plaintiff has leave to apply to the circuit Court for permission to further amend its complaint by setting out the facts upon which it relies for the enforcement of this departure from the rule of the two-fund doctrine.

This relates to the main appeal.

As to the appeal on the question of costs:

The clerk of the circuit Court taxed the Supreme Court costs in favor of plaintiff, Pace, against the defendants including Mahaffey and Gallivan, of whom Mahaffey and Gallivan contended that they were entitled to have Supreme Court costs for attorney's fees and printing taxed in their favor. From the taxation by the clerk against them they appealed to the circuit Court, which Court affirmed the taxation made by the clerk. Thereupon these two defendants appeal to this Court.

Apparently no question is made of the right of the plaintiff to tax his costs against the Stills. The fundamental object of the action was to foreclose the mortgage of the Stills to plaintiff in the sum of $4,000.00. True, plaintiff claimed priority of lien over the $6,000.00 mortgage of the Stills to Mahaffey over the same property, on the ground that the lien of the Mahaffey mortgage had been released by him in favor of the plaintiff, Pace. The issue of priority arose by reason of the fact that the Mahaffey mortgage, thus released in favor of Pace, had theretofore been assigned to Gallivan by Mahaffey as collateral security to a mortgage for $5,900.00 on the Koester property given by Mahaffey to Gallivan. In other words, the plaintiff, Pace, invoked the two-fund doctrine as against Gallivan, and the circuit Court sustained the contention. But the Supreme

Court denied it. If nothing else had been done in the premises, unquestionably the defendants, Mahaffey and Gallivan would have been entitled to their Supreme Court costs for attorney's fees and printing. But that was not the final determination of the matter. The Supreme Court said to plaintiff, "you are not entitled to have the two-fund doctrine applied as against Mahaffey and Gallivan because the facts of the case do not bring you within the purview of that rule of law, but there is another akin to this to which you may be entitled if upon proper pleadings you can show that the facts entitle you to its application. Therefore, we will remand the case to the circuit Court in order that you may by proper pleadings and evidence bring the matter to the attention of the Court for determination. That is the status of this matter. It is yet in the Court for decision. If, upon a proper hearing, plaintiff's right to the application of such doctrine as will require Gallivan to exhaust his remedy against the Koester property before proceeding against the Still property is sustained, then Pace, as plaintiff, would be entitled to tax the costs against Mahaffey and Gallivan. On the other hand, if it be finally decided that plaintiff is not entitled to this relief, then Mahaffey and Gallivan will be entitled to tax their costs against plaintiff.

In the meantime this question must remain in abeyance, awaiting the final determination of the case.

It is so ordered.

Mr. Chief Justice Blease and Messrs. Justices Stabler and Carter concur.

## On Petition for Rehearing

*Per curiam.*

We have given the appellants' earnest petition the consideration that it deserves, but find no good reason for granting a rehearing. With regard to the matter of costs, however, the appellants, having secured in

their appeal the reversal of the judgment in the Court below, are entitled to have the costs of the appeal taxed in their favor and against the respondent (*Sease v. Dobson,* 36 S. C., 554, 15 S. E., 703, 704; *Cunningham v. Cauthen,* 47 S. C., 150, 25 S. E., 87) ; and it is so ordered. With this modification our opinion in the case, filed November 1, 1932, stands as the judgment of this Court.

The order staying the remittitur is revoked, and it is so ordered.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.